**E-FILED**
Monday, 20 March, 2006  05:17:45 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUARAWA AMUDA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 06-3011 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge.

The Court now considers Petitioner Suarawa Amuda's Motion to

Vacate, Correct, or Set Aside Sentence pursuant to 28 U.S.C. § 2255.

## FACTS

On March 29, 2004, Petitioner Suarawa Amuda entered an open

guilty plea to charges of possessing a machine gun, being a convicted

felon in possession of a firearm and distributing cocaine. A Presentence

Investigation Report ("PSR") was prepared and copies were given to the

parties. The PSR held Amuda responsible for 1005 grams of crack

cocaine.

Amuda's sentencing hearing was continued several times due to

Booker-related concerns.  On May 14, 2005, the parties submitted a

Joint Position Regarding Sentencing Factors (hereinafter the "Joint

Agreement") in to order resolve objections to the Presentence

Investigation Report ("PSR").  The parties agreed that Amuda would be

responsible for at least 35 grams but less than 50 grams of crack.

The Court accepted the parties' joint position at the May 16, 2005,

sentencing hearing.  This resulted in a six level reduction of the

base offense level for Amuda's drug conviction and a reduction in his

guideline range from 210 to 262 months to 130 to 162 months.

Pursuant to the terms of the Joint Agreement, the government

recommended 130 months imprisonment for Amuda.  Amuda joined in

that recommendation.

The Court sentenced Amuda to 130 months imprisonment on the

drug count (Count 3) and ordered that it be served concurrently with

120 months of imprisonment that the Court imposed on each of the

gun counts (Counts 1 and 2).

Amuda appealed and his attorney filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).  The Seventh Circuit dismissed Amuda's appeal on December 14, 2005.  <u>See United States v. Amuda</u>, 160 Fed.Appx. 476, 478 (7th Cir. 2005) (unpublished).

Amuda filed his § 2255 habeas petition on January 17, 2006.  He argues that the Court should vacate, set aside, or correct his convictions and sentences because his counsel was ineffective.  According to Amuda, his guilty plea was involuntary and not made with his understanding of the charges and consequences of his plea.  He also claims that his sentence is unreasonable in light of <u>Booker</u> and that the disparity between crack and powder cocaine resulted in too great a sentence.  He further argues that the PSR erroneously used an uncounseled prior conviction to increase his Criminal History.  Finally, Amuda contends that he was coerced to accept the Joint Agreement by his attorneys and that his attorneys failed to investigate exculpatory evidence.

## ANALYSIS

In order to warrant relief under § 2255 for an issue which was not raised at trial or on direct appeal, a petitioner must show good cause excusing his failure to raise the issue at the proper time and actual prejudice resulting from the errors of which he complains.  See United States v. Frady, 456 U.S. 152, 167-68 (1982).  Unless both "cause" and "prejudice" are shown, a prisoner is barred from raising such issue in a § 2255 motion.  See Mankarious v. United States, 282 F.3d 940, 943 (7th Cir. 2002).

As the Court stated above, Amuda's claims that trial counsel was ineffective, counsel failed to investigate exculpatory evidence, the guilty plea was involuntary, the sentence is unreasonable, the PSR erroneously used an uncounseled prior conviction to increase his Criminal History, and Amuda was coerced to accept the Joint Agreement by his attorneys. The Court considers each claim in turn.

To show ineffective assistance of counsel, a petitioner must establish:  (1) his counsel's performance was deficient; and (2) that this

deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland, a petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that but for his counsel's unprofessional error, the result would have been different. Id. at 694. In evaluating the performance prong, a court must give great deference to the attorney's performance. Id. at 687.

Amuda's petition argues that his guilty pleas were involuntary and unknowing because of trial counsels' ineffectiveness. Amuda claims his attorneys coerced his pleas. He also alleges that they failed to: file pretrial motions; confer, consult and work with him; understand his factual and legal theories; investigate the facts and the law related to his case; interview witnesses he identified; discover exculpatory evidence; and seek voice exemplars.

Amuda's allegations are at odds with statements he made at his March 29, 2004, plea hearing. At that hearing, U.S. Magistrate Judge Byron G. Cudmore repeatedly told Amuda that no one could force him

5

to plead guilty.  Amuda said that he understood and said his decision was voluntary.  See Trans. 3/29/04 pp. 3-5.  While under oath, Amuda reiterated the voluntariness of his plea and stated that no one had threatened him or forced him to plead guilty.  Id. at pp. 48, 60-61, 25-26.

Magistrate Judge Cudmore explained Amuda's rights, the charges, the consequences of a plea, and the potential sentences.  Id. at pp. 14-21, 23-24.  Amuda listened to this and stated that he understood everything that Judge Cudmore said.  Id. at pp. 15-21, 23-24.  Amuda went on to admit the factual bases of each count.  He acknowledged constructively possessing the firearms by telling others what to do with them.  Id. at pp. 45-46.  He further stated that he sold crack to the informant on the date alleged in the Indictment, sold drugs to other buyers, and sold the quantity of drugs that was stipulated to.  Id. at pp. 45-46, 53-55, 58-60.  Amuda also said under oath that he had reviewed the Indictment, the government's evidence, and considered possible defenses.  Id. at pp. 21-22.  When asked, he stated that he was satisfied with his attorneys'

efforts.  Id. at pp. 13-14.

Not only do Amuda's admissions at the plea hearing establish his guilt on all charges, they contradict most of the assertions in his habeas petition.  Moreover, the record shows that his first attorney filed a pretrial motion asking for a continuance so he could review and analyze discovery materials.

The record in this case largely resolves the factual disputes that would otherwise necessitate a hearing.  Even if the record were unsatisfactory, Amuda's claim would fail because he has not alleged how his version of the facts establishes prejudice.  Amuda has not advanced any facts or legal theories that demonstrate either his innocence or a valid defense.  Amuda's failure to demonstrate prejudice bars him from raising any of the aforementioned issues via § 2255.  See Mankarious, 282 F.3d 940.

In addition to the above claims, Amuda argues that his sentence was unreasonable in light of the Supreme Court's holding in Booker and the 100 to 1 disparity between sentencing for crack and other cocaine.

Amuda attacked the reasonableness of his sentence on appeal and his

attorney addressed it in an <u>Anders</u> brief.  The Seventh Circuit deemed

Amuda's claim frivolous.  <u>See</u> <u>Amuda</u>, 160 Fed.Appx. at 478.  The Court

stated:

> a sentence within a properly calculated guidelines range is
> presumptively reasonable . . . and though a district court is
> free to consider the sentencing differential between crack and
> other forms of cocaine, a sentence cannot be unreasonable
> simply because the court does not exercise its discretion
> in the defendant's favor . . . .

<u>Id</u>. at 478 (citations omitted).

Because Amuda challenged the reasonableness of his sentence on

direct appeal, he cannot raise the matter in a §2255 petition unless he

shows  changed circumstances.  <u>See</u> <u>Belford v. United States</u>, 975 F.2d

310, 313 (7th Cir. 1992).  Amuda has not shown how the circumstances

of this case have changed from the time of his appeal.  Accordingly, he

cannot challenge the reasonableness of his sentence now.

Amuda next argues that his sentence was wrongly calculated

because:  incorrect information was used to determine his sentence; prior

convictions for which he was denied his Sixth Amendment right to

counsel were used to calculate his Criminal History Category; and "points were . . . double counted for the multiple concurrent convictions that shared the same sentence." These assertions lack merit.

Amuda fails to identify any untrue information or show how it prejudiced him. Therefore, he cannot prevail on this portion of his habeas petition.

Amuda's Criminal History Category was correctly calculated. Although Amuda had adult criminal convictions that totaled 13 points, §4A1.1( c) U.S.S.G. only allowed a one point credit for four of Amuda's nine criminal convictions for which he received sentences of less than 60 days. Five points were subtracted from Amuda's criminal history score of 13 and, for this reason, he had a Criminal History of 8 points. Seven points came via convictions where he was represented by an attorney: possession of a controlled substance (2 points); driving while license suspended (2 points); possession of a controlled substance (1 point); manufacture/delivery of a controlled substance (1 point); and domestic battery (1 point). Two other potential criminal history points came

when Amuda waived his right to an attorney for domestic battery convictions (1 point each).  The remaining convictions detailed in the PSR came while Amuda acted *pro se*.  All of this shows that Amuda was either represented by any attorney or waived representation for enough prior convictions to garner an 8 point Criminal History.

As for Amuda's claim that "points were . . . double counted for the multiple concurrent convictions that shared the same sentence," the Court has the same problem the Government mentions in its Response.  The problem is that the claim is unintelligible.  Amuda has not explained how the alleged double counting occurred, why it was an error, or how it prejudiced him.  Absent such a showing, Amuda is not entitled to relief on this portion of his claim either.

Finally, Amuda claims that he did not understand the terms of the Joint Agreement and that he was coerced into accepting it.   The Joint Agreement was a compromise the parties reached after the PSR held Amuda responsible for 1005 grams of crack.  The Joint Agreement stated that Amuda was responsible for at least 35 grams but less than 50 grams

of crack.  Consequently, Amuda's offense level was reduced by six levels

and his low-end  guideline range was reduced from 210 to 130

months.  The Court explained the terms of the Joint Agreement to

Amuda.  Amuda acknowledged his understanding and stated that he was

voluntarily pleading guilty to the offenses.  All of this refutes Amuda's

claims.  In any event, Amuda's assertions do not reveal any prejudice he

has suffered.  Thus, he cannot prevail on his § 2255.

ERGO, Amuda's Motion to Vacate, Correct or Set Aside Sentence

(d/e 1) is DENIED.  This case is CLOSED.

IT IS SO ORDERED.

ENTER:  March 20, 2006

FOR THE COURT:

s/ Richard Mills
United States District Judge